Good morning, your honors. Tim Warriner. I represent Mr. Mao. And I'm also submitting an argument this morning on behalf of Mr. Heng and Mr. Buckley. This is a joint argument. But you're not going to split argument among you or between you? We are. You'll just talk for everybody? I'm addressing the issue of the confrontation clause. And we have another argument that's going to be made separately. I'd ask for ten minutes on mine and I'd like to reserve two. Okay. Okay. And that leaves three. That leaves three minutes. Yes. And that second argument is going to be devoted to what then? The second argument is a sufficiency of evidence argument that relates just to Mr. Buckley. For Mr. Buckley's sufficiency argument. Okay. The clock counts down. I'll try to help you keep track of the time. Thank you. But please try to do it yourself as well. I'll try. Okay. Good morning, your honors. The Supreme Court has held that cross-examination is the principal means of challenging believability, of challenging credibility, and that when it comes down to an informant's testimony, that the defense is to be able to challenge the motivation, the motivations, and to probe the motivations of the informant. And in this case, the defendants were denied the right to meaningful cross-examination when the court prohibited them from questioning the informant about his motivations, specifically about whether he had an expectation or even in hope that he could help his son who was facing federal charges. That information was necessary to assess this informant's credibility. But that was an entirely different offense, wasn't it? Did that have anything to do with this offense? The son's offense, your honor? Yes. Yes. The son had a separate federal case that did not have anything to do with this case. But at the time the informant was acting as an informant, the son was facing that prosecution and was looking at that federal prosecution. I guess what troubles me on this, counsel, is if you're at the trial level, the defense counsel may know proper as to what the evidence would have been had he been permitted to cross-examine. And if the issue is about the credibility of Savala, there was, on direct examination, the government elicited information he'd been arrested six times, he'd been imprisoned for possessing cocaine, he'd been a cocaine addict and heroin user, was cooperating with the police to work off his arrest for cocaine possession and was later paid for cooperating with the police. And then on cross-examination, it was much of the same sort of thing. Aside from that, what possible information could have been elicited on the confrontation that you're asking for that would have had the slightest impact on this case? Your honors, we contend that the proffer was sufficient. The one that the judge said was a fishing expedition, right? Exactly. And we disagree that it was a fishing expedition. It was rooted in fact. And under Davis v. Alaska, that case essentially says that the right to cross-examination means the right to put these questions to the jury, the right to confront the witness with facts and to force the witness to answer the questions and for the jury to see how the witness handles those questions. So the proffer was sufficient because it set forth the factual framework and the method of impeaching that witness that defense counsel sought to engage in. And under Davis v. Alaska, that's what the confrontation clause protects and that's what the jury was deprived of seeing. I'm inclined to think that the judge made a mistake, meaning you gave the judge enough to work with to think that this was not just a highly speculative fishing expedition. You said in your experience the sentence that the son had gotten suggested to you that this was in some fashion a quid pro quo for the cooperation of the father and so on. So I'm inclined to agree with you that the judge made a mistake. On the other hand, I mean in the sense this goes along with Judge Smith's question, there was a fair amount of evidence against your client that wasn't directly dependent upon the evidence provided by the informer. And the informer was, you know, there was lots of reason already in front of the jury from which the jury could conclude that, you know, he was working off his own offense by doing this. So why wasn't this, if error, why wasn't this harmless? I mean we're kind of going over the same ground I did with Judge Smith, but I wanted to say I'm agreeing with you on the error question. I'm only on the harmlessness question. I think the information about the motivation of helping the son is critical because what the jury was left with was that this guy received some minor amounts of money, $40 to $50 a buy. The witness testified that he received $3,000 a month VA benefits, so the money wasn't very meaningful. He did say he was working off a case, but it was .4 grams of cocaine base, $20 worth of cocaine base. But I think the jury understood that he was working off a case meant that he was avoiding a jail term. Yes, that is what the jury understood, but they also understood the agent characterized it as a minor case that was simple possession, .4 grams, so it would likely, very likely be viewed as not a real motivator. This wasn't a guy who was facing a lot of time. So I think that that is different, and I do think in terms of harmless error, okay, what is critical in this case is that the Chapman standard applies, so it is the government's burden of proving harmlessness beyond a reasonable doubt. Even before you get to that, and I'm not where my friend Judge Fletcher is on the first point yet, because the third prong of Larson is whether the exclusion of evidence left the jury with sufficient information to assess the credibility of the witness, and the other information that I referred to, and I didn't even get to what you actually did get the cross-exam on, seems to me to overwhelmingly cover the issue that you are so concerned about. Why am I wrong about that? I think, Your Honor, that what the jury was left with was that the jury would not think that there was much motivation for this guy to lie because his case was real minor. He had just been busted for simple possession. Maybe he was looking at time, but it wouldn't have been much, and he just received a few bucks on every buy, and he was making $3,000 a month. So I think that what the jury was left with wouldn't reveal the motivation, and I think that the Larson case is relevant because there the jury didn't hear that the person had a mandatory minimum, and the court said that the jury wasn't given evidence about the magnitude of the incentive. And I think that that is consistent with what went on here is that the jury didn't see the magnitude, didn't hear cross-examination about the magnitude of the incentive to testify according to the government's desire. Even in light of the information to which I previously made reference and on cross-examination, I don't know if it's you personally, but the defense solicited this additional information about, is it Zavala? Is that the way you say it? Yes. That he'd used rock cocaine for years, sometimes several times a day, was a drug addict during the buy in this case, used cocaine after this case and pleaded guilty to that offense, had an offense related to heroin and was also arrested in the 60s, 70s, and 80s. I mean, they really loaded it on this guy. I don't know what else you were going to indicate to the jury that was something that would add any confrontational value from a constitutional perspective. I think the court is accurate in terms of what information the jury did see that this guy had a checkered past, he had a drug past. We agree with that. But I think that the significance of it is that did the jury give enough information about the incentive to falsify, the motivation of the witness, and that checkered drug past doesn't really shed any light. What more would you have added? If you were cross-examining this gentleman right now, in addition to what we've talked about, what I've talked about, what Judge Fletcher's talked about, what more would you have inquired about? What we wanted to inquire about is we wanted to put to the witness questions about his son facing federal charges, about whether he had asked the officers. Did you know anything about the son at that point? What we knew is that at the time the informant was working as an informant, the son, an arrest warrant had been issued and that the son was facing federal prosecution. So we knew that at that time, the informant's work, the son was in jeopardy of serious consequences. And we weren't permitted. But you had no information that would suggest that the defendant here had arranged anything in relation to his son. All we had was I think the circumstances because of the son's case proceeding at the same time as this informant was working, those circumstances suggested that this was the case. That's what we had. That's similar to somebody saying people have caught fish in this lake before, therefore I think if I put a pole in there with some bait I might catch something. Right. That's kind of along the judge's analogy, right? I don't think it was because to have those elements come together that, lo and behold, this witness, this informant's son is facing charges at the same time. And I think counsel, Mr. Ballas, who made that objection and who made that proffer indicated that in his experience as a federal defense attorney, family members have received a benefit from the work of an informant before. So there was definitely, the questioning was definitely in good faith and definitely had a factual basis. It was a question of degree, was it not? It's not like you were completely closed out. It's just you want a little bit more, I understand that. But it was a question of degree, right? A question of degree of? The quantum of information that you could raise before the jury in terms of the motivation of Mr. Zavala. You could say it's degree, but I think it was the degree that essentially was required by the Sixth Amendment. I understand. That, in other words, we needed that to get meaningful information to the jury about the informant's motivations. Okay. Let me stop you there. You've used 11 minutes, and I wanted to let you make sure you had enough time for rebuttal. I'll save the rest for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. I'm Joseph Wiseman on behalf of Mr. Buckley. I'm going to spend three minutes probably speaking quite rapidly. Your Honor, in spite of the formidable hurdle of U.S. v. Nevels with respect to sufficiency of the evidence challenges, I think the record, my view is the record in the case, the information that was presented before the jury shows that this conviction can't stand because it's the evidence was insufficient. And let me highlight, if I may. For example, the evidence with respect to Mr. Buckley being involved in drug trafficking, the facts that were before the jury, which in the record is, for example, between the Mr. Zavala, the informant, there were 20, between 20 and 40 purchases. Pardon me, Your Honor? Between the confidential informant. During those individual purchases, at no time was Buckley's name mentioned by the confidential informant. Can I just shortcut something, get your perspective on it? According to my notes, the information before the jury about Buckley was that cocaine was found in his car, cocaine base was found next to his car, Buckley was the only person in the car, Buckley gave Mao a brown bag full of cocaine base, Buckley and Mao exchanged phone calls right before the drug sale. Do you dispute any of those? Well, no, Your Honor. And Buckley runs like hell. That's quite. A hundred miles an hour. And Bruce will thank us jumping off the ice tree bridge. But nevertheless. He was playing quite a good jumper. Yes. I don't think he's going to repeat that, Your Honor. With respect to what you said, Judge Smith, one thing that I think needs to be brought to the fore is that the $5,200 that the undercover officer gave Zavala was never recovered. Certainly Mr. Buckley was found at the car with some cocaine. And I'm not disputing the fact that he should be convicted for the possession of a cocaine that was at the car, the scene of the car. What I'm concerned about is the evidence with respect to the larger transaction, and I believe that it's insufficient. Yes, Buckley was a sole driver. There was a phone call just about 1137 and then one at noon. Prior to that, there was no evidence there were any phone calls between Buckley, Mao, or Hancock. But the jury had enough information that it could satisfy Nevels, did it not? I respectfully disagree with that. I think that's a good point. You're a good lawyer, and I wouldn't expect that you would. The reality is that the Nevels standard is not hard to meet. For the government, it's not a difficult burden to meet. I understand that. But, again, just what I indicated to you, plus the fact that you can infer intent because Buckley gave Mao a brown bag containing 210 grams of cocaine, based on eight separate baggies. That's another element of this. When you put all that together, it seems to me that the jury had enough information. I grant you this is not a slam-dunk case, probably not as well put together in terms of the evidence. But the fact is, the standard at this point, the jury has convicted this guy. When we look back at this, did they have enough? And I am troubled by the concept that these elements that we've discussed were insufficient. Why am I wrong? Your Honor, with respect to the brown bag, my recollection of the record is that there was testimony by the agent that he observed a bag from Buckley to the co-defendant, Mao, I believe. He didn't opine at the time of the trial that he knew that the bag contained. I'm assuming an inference of intent because of the delivery of the bag. That's a reasonable position to take. But the one of the problems that I see with the government's case is that in observing Zavala before the transaction took place, he was seen bending down near the apartment, near one of the units. And it could have been there that he acquired the contraband, not necessarily the contraband that was in the bag that was transferred from Buckley to the co-defendant. Do you agree Magallon Jimenez provides a similar factual framework to infer the intent? I would concede that because I think that case does, in fact, stand for that proposition. Right. But in the constellation, my view, in the constellation of the facts, in spite of the noble hurdle, I believe there's insufficient evidence with respect to the substantial charges, not necessarily the possession of the material that was in the car, that his conviction for those other charges should not stand. Okay. Thank you, Your Honor. Thank you very much. Now, you've used up all the time, but we will give you a minute for rebuttal. Okay. Good morning, Your Honors. May it please the Court. My name is Daniel McConkie, and I represent the United States in this matter. I'd like to take a moment and address Mr. Warner's – Mr. Warner's arguments about the offer of proof that was given in this case. I heard phrases from Mr. Warner that the case of the informant's son was perceived   time as the case of the informant on the stand. I heard statements that the son was facing – that at the time the informant's case was pending, the son was also facing federal charges. I think it's important to note that that was not before the trial court. The trial court didn't have that information available. The trial court only knew that at some point the informant's son had been charged in federal court, convicted in federal court, and received a 5K. Indeed, it was clear on the record – it was clear on the record that the informant's son had already received that 5K benefit, and – You're confusing me, counsel. You're saying it was clear on the record that the son had already received something. I thought you said earlier that the trial court didn't know about the son. What did the trial court know about the son? The trial court knew, and I've cited this in my brief. It's an important piece of the transcript. The trial court knew that the informant's son had faced a federal charge, the time was not given, had been convicted, the time was not given, and received a 5K. The time was not given. And so that fact that defense counsel just added that the two cases were pending at the same time and therefore it might have been more reasonable for the informant's son to receive a 5K – it might be more reasonable for the informant to expect a benefit for his son – that that inference was not easy for the trial court to draw. That's why the trial court characterized it as a fishing expedition, because it was a bare-bones offer of proof. And I note that defense counsel never elaborated later. Defense counsel could have come back later in the trial, at least with the case number and the date of conviction of the son, some basic information. I've got it here in front of me. I've read what was in front of the judge. It seemed to me pretty clear what was being said to the judge was, we know that the son got a 5K, and we would like to know whether there was any consideration for getting that 5K based on your performance. It was very clear. And the lawyer for the defense says, I've been a federal criminal defense attorney for over 10 years. I'm familiar with cases where people have gotten a 5K reduction for family members based on saying something on something. I'm entitled to know whether it happened or not. I'm going to ask a question, and the answer is either yes or no. It seemed to me. Now, whether this rises to the level of confrontation, I don't know. I'm inclined to think yes. But I'm also inclined to think that there was a fair basis for asking that question. This was not just, is there anything possibly here in the universe having to do with any of your children? This is pretty clean. This is pretty directed. It's based on his experience. And the answer was going to be yes or no. I think the judge had plenty. If it was a fishing expedition, it was at a trout farm. Well, speaking of that, Your Honor, I think it might be helpful to look to the Larson factors here. The third Larson. It may nonetheless be harmless. I mean, I'm sorry. Sure, sure, sure. I understand. Certainly the question was made with a good faith basis. But, you know, in the heat of trial on an issue that hasn't been briefed beforehand, that's asking questions about the cooperation of a witness not before the court, given the information before the trial judge, I think it's within the trial court's discretion not to allow the question. Defense counsel never came back with a little bit more of information that may have tipped it over the scales. But in any event, I would like to address the harmless error. What more information would you come back with? Well, I think at a minimum he could have come back with the case. He could have reminded the court that it was before the same trial judge. The record doesn't indicate that the court remembered that. Could have come back with the timing. The record doesn't disclose that there was any kind of conversation between the prosecution and the defense about whether this benefit was actually received. The record is kind of thin on this. In the other cases, and I include Larson, I include Davis v. Alaska, I include Delaware v. Barnarsdale, the bias of the witness was clear and it's on the record for everyone to measure its worth. In Larson, the cooperating witness faced a mandatory life sentence. Here, it's not disclosed what the son was charged with, for example, or what kind of benefit the father could have expected to have given to the son. I agree, it is a matter of degree, but I think given what the trial court had, it was not unreasonable to simply ask counsel to move on. Wouldn't a lot of that come out with the examination by the attorney? Absolutely. When questions are asked, more information could have been learned right there on the record, but I think that's why the second Larson factor of balancing other competing interests comes into play, that the trial court has to have some discretion to direct the flow of questions. The government made a relevance objection. I think the relevance objection was well founded on the record, although a close call. No, it's highly relevant. I think the government made an objection, which certainly should have said objection, speculation. But the answer is clearly relevant. And if the answer is, yes, there was some consideration, I can't think of anything more relevant. No, the answer was, I'm afraid of the answer and I think it's speculation. And the judge decided it was speculative, not that it was irrelevant. I'm not sure that I understand the distinction between granting the objection as irrelevant or speculative. I guess I see them as very similar. Here, I'll explain it to you. If the answer had been from the witness, yes, I am cooperating in part because my son got a 5.K, that answer is highly relevant to the motivation he has for acting in the way he's done in giving this testimony. So the answer has to be relevant. Now, whether you're going to get that answer is highly speculative, or at least in the view of the district judge, highly speculative. I suppose in either case, for the court to rule on grounds of it being speculative would still have been within the trial court's province to do. Well, I think that's what the district judge did. That was not the objection made, but that was the objection ruled on. Yeah, the district judge said you don't have any idea whether anything about his son has any connection to this witness at all, which follows along with what Judge Fletcher said. I think it's a fair reading of the record, Your Honors. Yeah. I'm sympathetic to it. You know, you make an objection, you say the first word that pops into your mouth, and sometimes you get it and sometimes you don't, but the judge understood. Yes. I mean, again, this happened very quickly on not a whole lot of record, and that's why I think given the weight of what happened in the trial and the other cross-examination, it just doesn't quite get there. I can briefly address the harmless error question if Judge Fletcher is still concerned about the issue. No, I'm not. All right. If the Court doesn't have any more questions, I'm prepared to submit on the briefs. Thank you, Your Honors. Just a couple points, Your Honor. I believe what I told the Court was that the proceeding of the informant's son was taking place at the time of the informant's cooperation, at the time the informant was doing his work with the police. That's what I meant. I don't think I said that it was taking place at the time of the trial, okay? There is a question about we don't know what this witness would have said. The question looked like a good question, but we don't know what the witness would say. I believe there are cases saying that it's the policy of the Court to allow leeway in cross-examination, especially of informants, because of the legitimate concerns about veracity and credibility and giving the jury all the information it needs to judge that. And Davis v. Alaska says that in cross, we want to expose to the jury facts from which they could draw inferences about credibility, and the jury should get the benefit of the defense theory before them. And that's what defense counsel was attempting to do by putting these questions to the witness. And I think it was prejudicial. This witness was critical. He was critical to the negotiation that went on and was the only witness to that factor.  Thank you, Your Honor. Thank you very much. Thank everyone for good arguments. United States v. Heng, Mao, and Buckley is now submitted for decision. In the next case on the argument calendar, United States v. Ramirez-Valadez. Thank you.
judges: Hug, Fletcher W. , Smith M.